UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

**DECISION AND ORDER**
09-CR-331A

v.

HECTOR RODRIGUEZ,

Defendant.

I.    **INTRODUCTION**

Pending before the Court is a motion (Dkt. No. 671) by defendant Hector

Rodriguez for release on reasonable bail conditions.  Counting both state and

federal custody, defendant has been in continuous custody on charges still

pending against him since October 1, 2009.  Since then, defendant's drug

charges were transferred to federal court by way of criminal complaint (10-MJ-6);

presented to a grand jury and filed as an indictment in a separate case (10-CR-

189); incorporated into a Second Superseding Indictment in this case that made

defendant part of an alleged racketeering enterprise and conspiracy; and then

carried over into two additional superseding indictments that added a firearm

charge and two overt acts relating to the racketeering conspiracy.

Defendant argues for release on the basis that, after 38 months, five

indictments in this case, and numerous reschedulings to accommodate waves of

added defendants, the Government still has not even completed discovery.

According to defendant, the Government's failure to tie up all loose ends with discovery means that additional motion practice may yet be necessary; combining that possible need with hearings scheduled in February to resolve numerous other pending motions, defendant almost certainly will not see a trial anytime in the near future. Under these circumstances, defendant argues that further pretrial detention would be punitive and would constitute a due-process violation. The Government opposes release, stressing that much of the delay in this case occurred from defense requests for extensions of time. The Government also emphasizes that due-process analysis follows no bright-line rules as to when detention becomes excessive.

The Court held oral argument on December 14, 2012. For the reasons below, the Court grants the motion but stays any release for 30 days in anticipation of further proceedings before Judge Arcara, the presiding trial judge in this case.

## II.    BACKGROUND

### A.    *Original Charges Against Defendant*

Across a number of proceedings and accusatory instruments dating back to March 2010, the Government has accused defendant of drug activity, firearm possession, and gang-based racketeering related to his membership in a street gang called the 10th Street Gang.

The alleged events connecting defendant to the present case began with his state arrest in October 2009.  At that time, local law enforcement agents and confidential informants working with them were investigating defendant for gang-related drug activity observed at two different houses in the City of Buffalo.  On October 1, 2009, local law enforcement agents arrested defendant after observing him with cocaine while in his car.  The agents charged defendant under state law with Criminal Possession of a Controlled Substance with Intent to Sell and Criminal Use of Drug Paraphernalia with Packing Material.

By the spring of 2010, state and federal prosecutors decided not to prosecute defendant at the state level but rather at the federal level.  On February 5, 2010, the Court (Schroeder, *M.J.*) signed a criminal complaint (10-MJ-6) in which the Government accused defendant of drug possession and drug conspiracy in violation of  21 U.S.C. § 841(a) and 21 U.S.C. § 846.  During proceedings on March 29, 2010, defendant waived his right to a detention hearing at that time because he was serving a state parole sentence but reserved his right to revisit detention in the future.  On June 29, 2010, the Government filed a two-count indictment (10-CR-189) that contained the same drug-possession and drug-conspiracy charges as the prior complaint.  At the conclusion of a detention hearing on August 24, 2010, Magistrate Judge Schroeder ordered defendant detained.  On August 26, 2010, Magistrate Judge Schroeder issued a formal detention order in which he found defendant to be a flight risk and a

danger to the community.  Magistrate Judge Schroeder took the time in his

detention order to set forth the details of defendant's lengthy history of criminal

conduct and parole violations:

> In January of 2008, he was charged with criminal possession of a
> controlled substance, a Class B Felony, as well as a Class A
> misdemeanor and a Class B misdemeanor, wherein he was
> convicted by reason of his plea of guilty to criminal possession of a
> controlled substance, a narcotic drug, a Class B felony, and
> sentenced to one year.  The defendant was allowed to be released
> and placed on parole, but as indicated in the Pretrial Services
> Report, in November of 2008, the very same year in which he
> entered his plea, his plea having been entered in August of that year,
> he was found to have been in violation of his parole terms.  As a
> result, he was required to serve out his sentence.  Then,
> notwithstanding his having been convicted and released on that
> January 2008 charge, in April of 2008, he was arrested and charged
> with criminal possession of a controlled substance in the 3rd degree
> with intent to sell, a Class B felony, as well as criminal possession of
> a controlled substance, a narcotic drug, a Class B felony, as well as
> a couple of misdemeanors for possession of controlled substances.
> Once again in August of 2008, the defendant pled guilty to attempted
> criminal possession of a controlled substance of the 5th degree, that
> is, cocaine of 500 mg or more, a Class E felony, and in September of
> 2008, he was sentenced to one year of imprisonment and then also
> one year of supervised release after completion of that sentence.
> Those charges occurred while the defendant was released on bail in
> the January 2008 case, which indicates his failure to obey or abide
> by the terms and conditions of release that had been imposed on
> him in the first case of January 2008.  In May of 2008, the defendant
> was charged with criminal possession of a controlled substance in
> the 5th degree, a Class D felony, and once again in August of 2008,
> he entered a plea of guilty to attempted criminal possession of a
> narcotic drug in the 4th degree, a Class D felony.  Once again, as
> part of that September 2008 sentencing, he was sentenced to a term
> of imprisonment with a term of supervised release thereafter.  In
> October of 2009, while at the age of 21, the defendant was once
> again charged with criminal possession of a controlled substance, a
> narcotic drug, a Class B felony, as well as criminal possession of a

controlled substance in the 3rd degree, a narcotic drug, with intent to sell, a Class B felony. Those charges are the state charges that have also basically formed the charges in the present Indictment. I reference all of those charges and arrests and pleas because they all involve drug counts—drug counts that occurred while the defendant was already charged with a prior drug crime and on bail or while he was on parole which resulted in his parole being violated and his being re-arrested while on parole supervision. That criminal history, coupled with the presumption created by the Statute and my consideration of what has been proffered by the government as well as what has been proffered on behalf of the defendant cause me to conclude that the presumption has not been rebutted.

(Case No. 10-CR-189, Dkt. No. 12, at 3–5.)

## B. *Incorporation into the Present Case (09-CR-331)*

By late 2010, the Government decided that it had enough evidence linking defendant's conduct to its wider investigation of the 10th Street Gang that it wanted to incorporate defendant's case into the case against that gang. The Government requested and received from Judge Arcara an order dismissing Case No. 10-CR-189. (*Id.* Dkt. No. 13.) Just before that dismissal, on September 15, 2010, the Government filed a Second Superseding Indictment in this case (Dkt. No. 69) that contained four counts against defendant. In Count One, the Government accused defendant of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). The Government further alleged the following overt acts by defendant in furtherance of the conspiracy:

> 1. On or about January 24, 2008, defendants PEEBLES and H. RODRIGUEZ, and unindicted co-conspirators possessed approximately 17.52 grams of cocaine base, twenty-seven (27) hydrocodone tablets weighing approximately 17.28

grams, a quantity of marijuana, a digital scale, and $364 U.S. currency at 185 Breckenridge Street, in the neighborhood controlled by the 10 Street gang. (Dkt. No. 69 at 18.)

2. On or about February 20, 2008, defendant H. RODRIGUEZ possessed 28 plastic corners containing approximately 3.43 grams of cocaine base at 185 Breckenridge Street, in the neighborhood controlled by the 10 Street gang. (*Id.* at 19.)

3. On or about March 27, 2008, defendant H. RODRIGUEZ possessed a plastic bag containing approximately 16.68 grams of cocaine base, a Hi Point Model JF 9mm Luger, bearing serial number 501247, with nine (9) rounds of 9mm ammunition at 185 Breckenridge Street, Buffalo, New York, in the neighborhood controlled by the 10 Street gang. (*Id.* at 20.)

4. On or about April 22, 2008, defendant H. RODRIGUEZ possessed approximately 12.52 grams of cocaine base, a quantity of heroin, and a quantity of marijuana at 185 Breckenridge Street, in the neighborhood controlled by the 10 Street gang. (*Id.* at 21.)

5. On or about October 1, 2009, defendant H. RODRIGUEZ possessed a quantity of cocaine base near the intersection of Connecticut Street and Prospect Avenue, in the neighborhood controlled by the 10 Street gang. (*Id.* at 25–26.)

6. On or about October 1, 2009, defendant H. RODRIGUEZ possessed over one-half ounce of cocaine base and plastic baggies at a house located at 303 Fargo Avenue, lower apartment, in the neighborhood controlled by the 10 Street gang. (*Id.* at 26.)

The Government also alleged, as a special factor for Count One, that defendant "did knowingly, willfully, and unlawfully, combine, conspire, and agree together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and distribute, 50 grams or more of a mixture

and substance containing cocaine base, and 5 kilograms or more of a mixture and substance containing cocaine, Schedule II controlled substances, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)." (*Id.* at 32–33.)

In Count Two of the Second Superseding Indictment, the Government charged defendant with racketeering in violation of 18 U.S.C. § 1962(c) and attributed five acts of racketeering to him. In Count 35, the Government accused defendant of drug possession with intent to distribute for the events of October 1, 2009. In Count 46, the Government accused defendant and others of drug conspiracy. Defendant did not ask the Court to revisit his detention during the pendency of the Second Superseding Indictment.

On April 28, 2011, the Government filed a Third Superseding Indictment against defendant and others. All of the previous charges against defendant remained, in renumbered Counts 1, 2, 43, and 56, but the Government added a charge (Count 57) of possession of firearms in furtherance of drug crimes in violation of 18 U.S.C. §§ 924(c)(1) and 2. Defendant did ask the Court to revisit his detention after the Third Superseding Indictment and filed a bail motion on July 13, 2011. (Dkt. No. 251.) Following a detention hearing on July 6, 2011, this Court denied the motion on the grounds that no circumstances had changed since Magistrate Judge Schroeder's order of August 26, 2010. (Dkt. No. 265.) Defendant filed another bail motion on December 13, 2011. (Dkt. No. 371.) The

Court held another bail review hearing on February 2, 2012 and ultimately denied

that bail motion on April 12, 2012. (Dkt. No. 488.) In denying the motion, the

Court noted again that circumstances had not changed, except that the charges

against defendant appeared to have intensified since Magistrate Judge

Schroeder's original detention order. (*Id.* at 6.) As for the growing duration of

defendant's detention, the Court noted the following at the time:

> At present, the Court has in place a new schedule that requires all
> defendants to file motions by July 16, 2012, that requires the
> Government to respond by August 30, 2012, and that sets oral
> argument for September 19, 2012. If this schedule changes in the
> months ahead for any reason attributable to the Government then
> the time may come to undertake a deeper due-process analysis and
> to require the Government to set forth a plan for a timely resolution of
> the case. The Court finds, however, that present circumstances do
> not warrant that analysis quite yet.

(*Id.* at 7–8.)

Between the detention hearing and the denial of bail mentioned in the

previous paragraph, the Government filed a Fourth Superseding Indictment on

February 2, 2012. (Dkt. No. 408.) The Fourth Superseding Indictment did not

change the charges against defendant, though it added the following overt acts

with respect to Count One:

> 7.    On or about May 22, 2006, the exact date being unknown to
> the Grand Jury, after learning that rival drug dealers were
> making a lot of money selling crack cocaine from 235 Hudson,
> defendant H. RODRIGUEZ dressed in old and dirty clothes,
> pretended to be a crack cocaine user, and went to the
> residence located at 235 Hudson Street to purchase crack
> cocaine from the rival drug dealers. After purchasing crack

cocaine from the rival drug dealers, defendant H. RODRIGUEZ returned to a 10 Street drug house located at 257 Whitney Place where he told defendants PEEBLES and DELGADO, and others, that he did not see any guns in the possession of the rival drug dealers located inside the house. (*Id.* at 19.)

8. On or about May 22, 2006, the exact date being unknown to the Grand Jury, after defendant H. RODRIGUEZ reported that the rival drug dealers inside 235 Hudson Street did not have any firearms, defendant DELGADO, who was armed with a handgun, and two other armed 10 Street gang members went to the location and shot at rival drug dealers using an AK-47 and a shotgun in order to force the rival drug dealers out of the neighborhood controlled by the 10 Street gang. (*Id.* at 20.)

The following table summarizes how the charges against defendant have

unfolded since the original alleged events of October 1, 2009:

| Proceeding | Date | Charges |
|---|---|---|
| State Arrest | 10/01/2009 | Criminal Possession of a Controlled Substance with Intent to Sell; Criminal Use of Drug Paraphernalia with Packing Material |
| Complaint (10-MJ-6) | 03/05/2010 | Possession with Intent to Distribute 5g or More of Cocaine Base (21 U.S.C. § 841(a)); Conspiracy to Violate Section 841(a) (21 U.S.C. § 846) |
| Indictment (10-CR-189) | 06/29/2010 | Possession with Intent to Distribute 5g or More of Cocaine Base (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)); Conspiracy to Violate Sections 841(a)(1) and 841(b)(1)(B) (21 U.S.C. § 846) |

| Second Superseding Indictment (09-CR-331) | 09/15/2010 | Racketeering Conspiracy (18 U.S.C. § 1962(d)); Racketeering (18 U.S.C. § 1962(c)); Possession with Intent to Distribute Cocaine Base (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)); Drug Conspiracy (21 U.S.C. § 846) |
| --- | --- | --- |
| Third Superseding Indictment (09-CR-331) | 04/28/2011 | Previous charges plus Possession of Firearms in Furtherance of Drug Crimes in violation of 18 U.S.C. §§ 924(c)(1) and 2 |
| Fourth Superseding Indictment (09-CR-331) | 02/02/2012 | No changes from previous indictment; two additional overt acts for Count One |

## C.    *Discovery and Course of This Case*

The Government's decisions to transfer defendant's charges from the prior indicted case into this one, and then to supersede the indictment twice after defendant's addition, required changes to the pretrial schedule. Requests for extensions by defendant and others also required changes. After defendant entered this case through the Second Superseding Indictment and executed a waiver of conflict of interest regarding attorney representation (Dkt. No. 97), the Court held a hearing on January 18, 2011 to address requests for extensions of time to file pretrial motions. Defendant joined in the request of other defendants. (Dkt. No. 164.) At the hearing, the Court set a new motion deadline of April 19, 2011, a new response deadline of June 20, 2011, and a new oral argument date

of June 22, 2011. On the day of the motion deadline, defendant filed a motion joining others in seeking more time to file motions "[d]ue to the voluminous amount of discovery that has been provided by the government." (Dkt. No. 214 at 2.) The Court issued an amended scheduling order that set a new motion deadline of May 31, 2011, a new response deadline of June 17, 2011, and a new oral argument date of June 23, 2011. (Dkt. No. 224.) The Third Superseding Indictment required yet another modified schedule; the Court set one on May 24, 2011, with motions due by September 20, 2011. On September 20, 2011, defendants requested more time to file pretrial motions "[d]ue to [the] ongoing discovery process." (Dkt. No. 313 at 2.) On October 13, 2011, the Court issued an amended scheduling order that reset the motion deadline for November 10, 2011 and the response deadline for December 2, 2011. (Dkt. No. 338.) Defendant did file omnibus pretrial motions on November 10, 2011, including a request for severance. (Dkt. No. 359.)

After that time, the scheduling of pretrial motions changed a few more times, to reflect two Government requests for extensions, requests for extensions from other defendants, and a new round of scheduling and defense extensions prompted by the Fourth Superseding Indictment. The final round of defense extensions concerned the Court's directive that, for the sake of clarity, all defendants needed to re-file their motions in response to the Fourth Superseding Indictment. Defendant filed renewed pretrial motions on August 17, 2012 (Dkt.

No. 549) and a supplemental motion on November 16, 2012 (Dkt. No. 665). Oral argument on all defense pretrial motions occurred on December 5, 2012; the Court identified issues requiring hearings on December 14, 2012 (Dkt. No. 691); and those hearings will begin on February 5, 2013.

As for the substance of pretrial discovery, one issue that has prompted argument in the pending bail motion is the disclosure of search warrant materials pertaining to the investigation of defendant. Defendant's original pretrial motions of November 10, 2011 included requests for "copies of all search and/or arrest warrants, together with all supporting affidavits and any other documents in support of any warrant that resulted in the arrest of the defendant or the seizure of any property in this case" (Dkt. No. 359 at 20) and "[a]n itemized description of any property recovered or seized during the investigation of the charges, the person or place from which the property was taken, the person effecting such seizure or receiving the property, the date or dates the property was seized or recovered, and whether such seizure was pursuant to a warrant" (*id.* at 21). The Government responded that "the United States has provided, or made available, comprehensive voluntary discovery, including but not limited to: surveillance reports, search warrant photos, *search warrant application/affidavits and corresponding search warrants*" among voluminous other materials. (Dkt. No. 406 at 28–29 (emphasis added).) At that time, defendant made no comment about the assertion that the Government provided search warrants and their

corresponding applications and affidavits.  Only when, at Court direction,

defendant filed renewed pretrial motions did he issue the following challenge to

the Government:

> Conspicuously absent from the discovery are copies of the search
> warrants. The defendant previously requested copies of search
> warrants through discovery on the Third Superseding Indictment on
> November 10, 2011.  At this point in time, the defendant is left to
> speculate as to whether or not these search warrants exist. Because
> of the Government's failure to comply with this Court's order to
> disclose all evidence and the fact that no search warrants have been
> disclosed, the defendant is requesting that the Court preclude the
> Government from introducing any physical evidence against him, on
> the grounds that the Government has failed to comply with the
> Court's discovery order. It is patently unfair for the defendant to
> remain in custody while the government attempts to play games with
> the discovery.  It is even a bigger waste of time for the attorneys on
> this case, since we are left to speculate about the existence of
> documents.

(Dkt. No. 549 at 11.)

Having asserted previously that it provided search warrants and

applications, the Government responded to defendant's renewed pretrial motions

with ambiguity about any applicable search warrants.  The Government

simultaneously maintained its prior position and contradicted it by asserting that it

"has, and fully intends to comply with its discovery obligations pursuant to Federal

Rule of Criminal Procedure 16, the *Jencks* Act, and *Brady*.  Every effort will be

made by the government and its agents to locate the requested search warrants."

(Dkt. No. 584 at 21.)  The Government then raised alternative arguments that

defendant failed to identify particular statements that would create factual

disputes about any searches in question, and that defendant failed to establish that he had standing to challenge any searches in question. Defendant responded to the standing issue through his supplemental motion of November 16, 2012. On November 30, 2012, the Government produced the search warrants themselves; whether it also produced the underlying materials is not clear.

### D. *Pending Bail Motion*

With the duration of pretrial detention growing and with the issue about search warrant production heating up, defendant filed the pending bail motion on November 20, 2012. In support of the motion, defendant emphasizes the issue of search warrants heavily and contends that the Government's delay in producing the search warrants means that it did not comply with Court orders governing discovery. If the Government did not comply with discovery, according to defendant, then it bears significant responsibility for the length of his detention. Defendant argued further at oral argument that the Government's discovery failure has three important consequences. First, the Government cannot be ready for trial as it claimed during the December 5, 2012 oral argument, since its late discovery may prompt more motion practice. Further motion practice could mean indefinite continued detention for defendant. Second, the issue of search warrants has *Brady* implications, because the search warrants produced (one of which was marked at oral argument as Defendant Exhibit 1) do not mention

defendant's name and contain a physical description not resembling defendant. Third, the issue of search warrants implicates effective assistance of counsel because defense counsel cannot even give his client meaningful advice about pretrial strategy and possible pretrial resolution without exploring the issue of search warrants further.  Defendant also asserts that he has lifelong ties to this District and that he could live with his fiancee if released.

In opposition to the pending motion, the Government reiterates defendant's criminal history and the nature of the charges against him.  The Government downplays the issue of search warrants by arguing that the results of the searches in question have been known to defendant for a considerable period of time, meaning that he cannot claim an inability to have litigated those searches earlier.  The Government also argues that the search warrants in question did not need to make any reference to defendant because the places in question were "flophouses" and because defendant made no assertion of standing to challenge the searches until his supplemental motion of November 16, 2012.

## III.    DISCUSSION

### A.    *Reconsideration of Bail Generally*

Putting aside the issue of duration of detention, which receives separate treatment below, the Court will begin assessing the pending motion by addressing whether any other circumstances in the case have changed since the last order of detention.  Once the Court has issued a detention order, it may

reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). Where evidence was available to defendant at the time of the hearing, the hearing will not be reopened. *See U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Here, only a few circumstances have changed since the last order of detention, and the changes do not help defendant. The last order of detention (Dkt. No. 488) addressed a bail motion that was filed and heard just before the filing of the Fourth Superseding Indictment. The Fourth Superseding Indictment added two more overt acts to the already serious allegations against defendant. To the extent that he had not received it already, defendant in recent months also received voluminous discovery copied and distributed with the help of the Court's Information Technology staff. The Court will infer that any discovery produced

16

after the Fourth Superseding Indictment was no better than neutral toward defendant, since defendant has made no argument in the pending motion about any of that evidence changing the strength of the case against him.  As for the issue of search warrants, the Court is somewhat troubled that the Government stated explicitly on January 28, 2012 that it had provided both search warrants and underlying application materials, when it obviously had not done so.  Any delay caused by this misstatement would have had little impact up to now because it overlapped with a more general delay that the Government caused by superseding indictments so many times and by attempting to bring so many defendants to trial in a single case.  The Court will discuss that more general delay below.  Going forward, however, any delay in producing any additional search warrant materials will mean additional motion practice, which may slow down the case in the coming months.  To limit any future delay as much as possible, the Government is directed to produce any remaining search warrant materials, including applications and affidavits, by December 31, 2012.[1]

Overall, then, the substantive factors that prompted defendant's detention in the first place persist and still weigh in favor of detention.  Defendant has a significant criminal history that includes a history of supervision violations. Defendant currently is facing serious allegations that have grown more detailed with each superseding indictment.  As the Court noted in its prior order of

_____

[1]The Court is not staying this directive, in contrast to the order of release.

17

detention, those factors and all the factors mentioned in the prior order outweigh any factors such as family ties that might tilt toward pretrial release.  For the reasons noted above and in the Court's prior order of detention, the Court finds a substantive basis for defendant's continued pretrial detention.

## B.  *Analysis of Due Process*

The Court now comes to the most agonizing part of defendant's bail motion, the oncoming collision between a solid substantive basis for defendant's pretrial detention and defendant's right to due process to avoid indefinite detention.  "Every so often, a district court is presented with a problem that is virtually insoluble.  This is one of those cases."  *U.S. v. Ojeda Rios*, 846 F.2d 167, 168 (2d Cir. 1988).  Simply put, even though substantive grounds exist for detention, has defendant's detention grown so long that his due-process rights override those substantive grounds?  *Cf. id.* at 168–69 ("Judge Clarie has been understandably reluctant to release Ojeda Rios from pretrial confinement given allegations of appellant's past pattern of violent acts and disregard of his obligations under United States laws.  At the same time, Judge Clarie has been faced with continuous delays in getting appellant's and his co-defendants' case to trial, largely because of the zealous, perhaps overly zealous, pretrial demands of the defendants.  On the other hand, the government has been reluctant to agree to a severance.").

Answering the question of due process requires careful consideration of constitutional and Second Circuit criteria. "The government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to punishment of the detainee. Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention appears excessive in relation to the nonpunitive purpose. Pretrial detention of a defendant, when of reasonable duration, serves important regulatory purposes, including the prevention of flight and the protection of the community from a potentially dangerous individual. However, when detention becomes excessively prolonged, it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs." *U.S. v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993) (internal quotation marks and citations omitted). "To determine whether the length of pretrial detention has become constitutionally excessive, we must weigh three factors: (i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based, that is, the evidence concerning risk of flight and danger to the safety of any other person or the community." *Id.* at 1043 (internal quotation marks and citations omitted). The Court will address each of these factors in turn.

1.    *Length of Detention*

The first factor affecting a possible due-process violation is the total length of defendant's pretrial detention, regardless of any breakdown of responsibility that occurs later in the analysis.  *See U.S. v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (beginning due-process analysis by "[f]ocusing first on the duration of confinement" and acknowledging "the total time the defendants have been in pretrial detention").  Courts that measure total pretrial detention count actual detention plus likely prospective future detention; they ignore possible future detention that is only speculative.  *See id.* (assessing future scheduling that is "without speculation"); *see also Millan*, 4 F.3d at 1044 ("In weighing potential future detention, however, we take into account non-speculative aspects of future confinement.") (internal quotation marks and citations omitted).  "While the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and will rarely by itself offend due process."  *U.S. v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (internal quotation marks and citations omitted).

Here, the total length of defendant's pretrial detention overwhelmingly supports a finding of a due process violation because it has no precedent in Second Circuit case law.  Counting only time that defendant has spent in actual federal custody, defendant has been in federal custody since March 2010.  That would mean 33 months as of this writing.  Adding the few months that he spent in

state custody on charges that he still is facing for the events of October 1, 2009, defendant has been in custody for currently pending charges for 38 months as of this writing. Given last week's Order regarding remaining discovery issues and the potential pending issue of search warrant materials, discovery still is not complete. Evidentiary hearings will not occur until February. Factoring in time that the parties will need to file the transcript from the hearings and to file post-hearing submissions, a Report and Recommendation on all of the pending pretrial motions almost certainly will not be possible before mid-summer 2013 at the earliest. Especially given the large number of motions and issues that the Court needs to address, the parties almost certainly will file at least some objections to some of this Court's findings to Judge Arcara. The process of addressing objections likely will take two or three months at a minimum, after which Judge Arcara likely will have to evaluate how long a single trial would last and whether separate, smaller trials would be more appropriate. *See U.S. v. Casamento*, 887 F.2d 1141, 1152 (2d Cir. 1989) ("In those cases where the judge determines that the time for presentation of the prosecution's case will exceed four months, the judge should oblige the prosecutor to present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants."). Defendants going to trial likely will need a few months to file trial papers. In total, a trial in this case almost certainly

will not occur in 2013, which means that defendant will have spent a grand total of at least 50 months in some sort of pretrial custody for charges that originated at some level in October 2009 and are still pending against him.

Although the Second Circuit has repeated in past cases that total length of pretrial detention rarely by itself offends due process, any case from the Second Circuit that repeated that principle featured a length of detention significantly shorter than what has occurred here.  The following chart summarizes the nature of the charges and the length of pretrial detention for the most frequently cited and the most recent Second Circuit cases that address due process violations:

| Case | Charges | Length of Detention | Final Result of Motion |
|------|---------|---------------------|------------------------|
| *Gonzales Claudio*, 806 F.2d 334 (2d Cir. 1986) | Bank robbery plus unspecified other charges; 2 indictments | 26 months (14 plus trial set 4 months out to last 8 months) | Granted |
| *Ojeda Rios*, 846 F.2d 167 (2d Cir. 1988) | Bank robbery plus unspecified other charges; 2 indictments | 32 months; trial at least a year away and "will take many months to try" | Granted; defendant ordered released within one week |
| *Orena*, 986 F.2d 628 (2d Cir. 1993) | Racketeering; 2 indictments | 9 months; trial under way at time of decision | Denied |
| *Millan*, 4 F.3d 1038 (2d Cir. 1993) | Continuing Criminal Enterprise: conspiracy to distribute heroin; 1 indictment | 31 months, including mistrial and new trial set for 6 months later | Denied |

| | | | |
|---|---|---|---|
| *El-Gabrowny*, 35 F.3d 63 (2d Cir. 1994) | Conspiracy to levy against U.S.; bombing conspiracy; use and carrying of destructive devices for crimes of violence; 2 indictments | 27 months (18 plus trial one month out plus 8 months for the trial) | Denied with leave to renew motion in district court if trial "substantially delayed" |
| *El-Hage*, 213 F.3d 74 (2d Cir. 2000) | Conspiracies to kill U.S. citizens and to destroy U.S. property abroad; perjury; false statements; 1 indictment | 30-33 months (24 plus 6-9 months for the trial itself) | Denied; "unprecedented scope of violence" noted |
| *Hill*, 462 Fed. App'x 125 (2d Cir. Feb. 21, 2012) | Substantive and conspiratorial drug crimes; firearms offenses; 2 indictments | 26 months | Denied with leave to renew appeal if no trial or bail by July 1, 2012 |
| *Briggs*, 697 F.3d 98 (2d Cir. Oct. 9, 2012) | Conspiratorial drug crimes; 4 indictments | 26 months | Denied with leave to renew appeal if no trial or bail by Feburary 1, 2013 |

The above chart highlights two serious problems with the total length of defendant's pretrial detention. First, the Second Circuit never has assessed, let alone authorized, a total pretrial detention of 50 months or more under any circumstances. Second, while the Second Circuit has stressed repeatedly that due-process analysis follows no bright-line rules, the longest periods of detention that the Second Circuit has ever authorized involved a Continuing Criminal Enterprise or an "unprecedented scope of violence" related to international terrorism—more serious charges than defendant is facing here. In making that

observation, this Court certainly does not want to downplay the seriousness of the charges against defendant.  The Court stressed earlier in this decision that defendant is facing serious charges of drug possession and distribution along with racketeering and racketeering conspiracy, with overt acts that suggest that defendant at least facilitated an attack on a rival gang member on May 22, 2006. That said, however, prior instances when the Second Circuit authorized detention extending beyond 30 months involved very high levels of dangerous criminal activity.  Some of the defendants in this case may well have allegations against them that rise to that level, but this defendant simply does not.  The most recent cases addressing lengthy pretrial detention set a deadline by which bail or a trial had to occur to avoid more serious appellate scrutiny.  The first factor thus weighs heavily in defendant's favor and tends to make this case the "rare" instance when the total length of pretrial detention by itself offends due process.

2.    *Responsibility for Delay*

Next, the Court will consider the extent to which the Government is responsible for the years that defendant has spent in pretrial detention.  When looking for "responsibility," courts will consider any conduct intended to cause delay.  Courts also will charge to defendants time lost to motion practice that could have proceeded in a more efficient or practical way.  *Cf. Gonzales Claudio*, 806 F.2d at 341 ("[T]here is some basis for believing that defense counsel could have proceeded more expeditiously by taking a less fragmented approach to pretrial maneuvering.").  In between, though, lies a range of case-management

24

decisions by the Government that warrant at least some of the respect afforded to prosecutorial discretion.  *See U.S. v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993) ("[W]e decline to adopt a rule that would deter the government from seeking joint trials (or consenting to severance) as a means of economizing judicial and other resources.").  Courts generally avoid micromanaging cases, but respect for prosecutorial discretion does not mean that the Government always should receive complete absolution for decisions whose impact on pretrial detention is foreseeable.

Here, both sides have made decisions over the course of this litigation that have prolonged defendant's pretrial detention and have neutralized this factor in the due process analysis.  Defendant asked for three extensions of time to file motions, directly or by joining the extension requests of other defendants. Defendant made a challenge about search warrant materials just recently.  While not a major concern, the Court has a little concern about whether defendant could have identified any defects in discovery production in more consolidated fashion. *Cf. Gonzales Claudio*, 806 F.2d at 341 ("We recognize that defendants cannot litigate pretrial matters to the ultimate degree and then rely on the extra time attributable to their motion practice to claim that the duration of pretrial detention violates due process.  On the other hand, even normal defense pretrial activity would be time-consuming in a case involving so many defendants and so large a quantity of wiretapped and seized evidence.").  The Court adjusted the pretrial schedule several times to accommodate defendant's requests.  Defendant did not

request severance until November 10, 2011 and has not pushed for resolution of that request; in fact, the pending bail motion does not request severance as an alternative remedy.  At the same time, though, the Court notes that defendant effectively *was* severed by way of a separate criminal case (Case No. 10-CR-189), and that the Government reversed that severance by incorporating defendant into the Second Superseding Indictment and all subsequent indictments.

The Government also made other important case-management decisions along the way.  From the very beginning of defendant's original charges in October 2009, the Government made the initial decision to prosecute defendant federally and to arrange for dismissal of his state charges.  The Government then chose to prosecute defendant individually on charges that still form the bulk of his alleged criminal conduct; defendant would have received a trial and a sentence long ago if the Government had stayed with that decision.  Instead, the Government chose to layer this case with four superseding indictments, which added a little substance to defendant's alleged conduct but served the primary purpose of simply adding more defendants to the alleged racketeering conspiracy as more information became available.  Even though this case was filed in 2009, the Government chose to add the last six defendants as recently as February 2012.  If the original defendants in the case were still requesting discovery three years later, then the Government had to have known that adding six fresh defendants to such a complex case would require the Court and the parties to

start over with discovery for those new defendants and for all defendants with respect to the new ones. *Cf. U.S. v. Briggs*, 697 F.3d 98, 103 (2d Cir. Oct. 9, 2012) ("The realities of limited resources and the interests of efficiency may lead us to uphold exercises of prosecutorial discretion, but they do not suffice to excuse failures of prosecutorial diligence. When the government decides to prosecute a case of considerable complexity and scope, it must still pursue that case with promptness and energy. Due process does not slumber because cases are complex."). In fact, given last week's Order, discovery still is not completely finished. *Cf. Gonzales Claudio*, 806 F.2d at 342 ("[W]e note that the process of producing materials discoverable under Rule 16 has not yet been completed, even now, more than fourteen months after detention began.").

In reciting the Government's case-management decisions and their foreseeable consequences, the Court emphasizes that it has no desire to supervise the trial strategies or policy decisions of the United States Attorney's Office. Nonetheless, the Government has made choices throughout the duration of this case, and choices matter. *Cf. Gonzales Claudio*, 806 F.2d at 342–43 ("It suffices for present purposes to conclude that the Government, even if not deserving of blame, bears a responsibility for a portion of the delay significant enough to add considerable weight to the defendants' claim that the duration of detention has exceeded constitutional limits.") (citation omitted). Under these circumstances, then, the Court finds that the second factor in the due process analysis is neutral and does not favor either party.

27

### 3.    *Strength of the Proof*

As noted above and without infringing on the presumption of innocence, the final factor in the due-process analysis requires the Court to consider the strength of the Government's evidence that defendant poses a risk of flight, a danger to the community, or both.  The details of the Court's analysis appear earlier in this Decision and Order.  In short, defendant continues to face serious drug, firearm, and racketeering / racketeering-conspiracy charges that, apart from this due process analysis, would trigger a statutory presumption in favor of detention.  The evidence that the Government would present at trial appears to be strong and has strengthened over the course of the case, as additional overt acts became known.  Defendant has a lengthy criminal history that includes a history of violating conditions of state parole.  Ample reasons thus exist to believe that defendant has a strong motive to flee and would pose a danger to the community despite lifelong ties to the Western New York area.  This final factor in the due process analysis thus favors the Government.

In the end, then, a review of the due-process factors shows one factor in favor of the Government, one factor that is neutral, and one that is so overwhelmingly in favor of the defendant that it is without precedent in Second Circuit case law.  This analysis leaves the Court with a difficult decision to make. The Court is reluctant to release defendant given the charges and his criminal history, and in fact has not done so up to this point.  *Cf. Orena*, 986 F.2d at 633 ("We find nothing in the Bail Reform Act that requires the government to staff

home detention centers or allow dangerous defendants to be at large based upon their promise not to violate conditions of bail."). The Court also is aware that even the most stringent bail conditions will leave the community at some possible risk. "But the enforcement of all constitutional restraints upon government in its efforts to administer the criminal law entails risks." *Gonzales Claudio*, 806 F.2d at 343. With discovery still occurring and this case at least a year away from being ready for trial, further indefinite detention would cease to serve a regulatory purpose and would become punitive in nature. Under these circumstances, and given this defendant's role in the alleged conspiracy, the Court reluctantly finds that the Government has reached the outer limits of due process for this defendant and orders defendant's release as detailed below.

### C.    *Bail Conditions*

Although the Court is ordering defendant's release, it still wants to take whatever measures it can to minimize the risk of flight and to maximize the safety of the community. Accordingly, and subject to further review as described below, the United States Probation Office ("USPO") is directed to provide the Court a full list of bail conditions that it would consider appropriate given this order of release. At a minimum, conditions of release must include 1) a $100,000 bond secured by $20,000 cash and co-signed by two sureties of defendant's choice who are currently employed and have no criminal history; 2) home confinement with electronic monitoring at defendant's fiancee's residence; 3) no contact whatsoever with any co-defendants, alleged co-conspirators, alleged victims, or

any of their family and friends; 4) daily contact with the USPO and consent to drug testing on any schedule that the USPO deems appropriate; 5) consent to a search of the residence at any time; and 6) zero tolerance for any violation of these conditions or other conditions that the USPO may recommend.

### D.  *Stay of Release*

Under 18 U.S.C. § 3145, the Government has the right to seek review of this Decision and Order from Judge Arcara.  This Court anticipates that the Government will seek such review, if only to elaborate further on why this case might be so unusual that an extraordinary length of detention might be justified. Accordingly, the Court stays its order of release for 30 days pending the initiation of further proceedings before Judge Arcara.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court grants defendant's motion (Dkt. No. 671) but stays defendant's release for 30 days pending anticipated further proceedings before Judge Arcara.

SO ORDERED.

___/s Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: December 21, 2012